IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FIRSTMERIT BANK, N.A., a national banking association, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| TRINITY MANAGEMENT ASSOCIATES, L.P., an Illinois limited partnership; CARSTEN H. FRANK II, an individual; S. THOMAS CLEMENTS, an individual; DANIEL A. KINNARE, an individual; and WILLIAM J. SIVERS, an individual, | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

No. 12-887

## MEMORANDUM OPINION AND ORDER

FirstMerit Bank, N.A. ("FirstMerit") has sued Trinity Management Associates, L.P. ("Trinity"), Carsten Frank II ("Frank"), S. Thomas Clements ("Clements"), Daniel Kinnare ("Kinnare") and William Sivers ("Sivers"), alleging a breach of contract on the part of each defendant. All of those contract claims stem from the identical promissory note ("Note") on which Trinity was the maker and the individuals were guarantors under separate commercial guaranty agreements ("Guaranties"). Because each Guaranty contained a provision (as is customary in such transactions) that permitted the obligee under the Note to sue directly on the Guaranty without first having to pursue (let alone exhaust) its remedy against principal obligor Trinity, FirstMerit could properly sue all of the defendants in this

single lawsuit.

FirstMerit has now filed a motion under Fed.R.Civ.P. ("Rule") 56 for summary judgment on its Complaint Count I against Trinity and its Complaint Counts III through V against Clements, Kinnare and Sivers respectively (collectively "Guarantors").[1] Neither Trinity nor the Guarantors dispute any of the relevant substantive facts. Instead their only argument against the grant of summary judgment is that FirstMerit's requested amount of attorneys' fees and expenses is excessive. For the reasons stated in this opinion, FirstMerit's motion for summary judgment is granted as to the damages sought in Counts I, III, IV and V, with the amount of attorneys' fees and expenses to be decided at a later date.

**Standard of Review**

Every Rule 56 movant bears the burden of establishing the absence of any genuine issue of material fact (<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322–23 (1986)). For that purpose courts consider the entire evidentiary record and must view all of the evidence and draw all inferences from that evidence in the light

---

[1] Although Trinity initially included Count II against Frank in its motion for summary judgment, Frank filed a response asserting that he was not in fact a guarantor of the Note (Dkt. 64). Trinity then moved to withdraw its motion for summary judgment on Count II, asserting that additional factual investigation was needed as to that count (Dkt. 70), and this Court granted that motion (Dkt. 74). Accordingly this opinion will not address any issues as to Frank, and all references to "Guarantors" should be understood to exclude Frank.

most favorable to nonmovants (Egan Marine Corp. v. Great Am. Ins. Co. of N.Y., 665 F.3d 800, 811 (7th Cir. 2011)).

But a nonmovant must produce more than "a mere scintilla of evidence" to support the position that a genuine issue of material fact exists and "must come forward with specific facts demonstrating that there is a genuine issue for trial" (Carmichael v. Vill. of Palatine, Ill., 605 F.3d 451, 460 (7th Cir. 2010), quoting Wheeler v. Lawson, 539 F.3d 629, 634 (7th Cir. 2008)). As Payne v. Pauley, 337 F.3d 767, 772-73 (7th Cir. 2003) has explained:

> [T]he Federal Rules of Civil Procedure require the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Conclusory allegations, unsupported by specific facts, will not suffice.[2]
>
> Ultimately summary judgment is warranted only if a

---

[2] [Footnote by this Court] Lawyers (and regrettably judges) often lump "self-serving affidavits" into the category of submissions that are insufficient to overcome summary judgment. That blanket assertion is incorrect. Payne, 337 F.3d at 773 was careful to distinguish conclusory affidavits from merely self-serving ones:

> We hope this discussion lays to rest the misconception that evidence presented in a "self-serving" affidavit is never sufficient to thwart a summary judgment motion. Provided that the evidence meets the usual requirements for evidence presented on summary judgment -- including the requirements that it be based on personal knowledge and that it set forth specific facts showing that there is a genuine issue for trial -- a self-serving affidavit is an acceptable method for a non-moving party to present evidence of disputed material facts.

reasonable jury could not return a verdict for the nonmovant (<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)). What follows is a brief summary of the relevant facts.

### Statement of Facts[3]

As confirmed by the uncontested allegations in Trinity's First Amended Complaint, federal jurisdiction is predicated on diversity of citizenship. FirstMerit is a national banking association with its main office in Ohio (FM. St. ¶1). Trinity is a limited partnership all of whose members are corporations whose dual corporate citizenship is entirely sited in Illinois (<u>id</u>. ¶¶3-6 ), while all four individual defendants are also Illinois citizens (<u>id</u>. ¶¶ 7-10).

On March 31, 2010 Trinity executed the Note in favor of Midwest Bank and Trust Company ("Midwest") in the principal amount of $900,000 (FM. St. ¶ 13), with a maturity date of April 5, 1012 and containing an Illinois choice-of-law provision (<u>id.</u>). Although the security for the Note is no longer an issue, that security was provided by a November 15, 2007 mortgage ("Mortgage") on real estate known as 633 North Ironwood Drive,

---

[3] LR 56.1 requires parties to submit evidentiary statements and responses to such statements to highlight which facts are disputed and which facts are agreed upon. This opinion cites to FirstMerit's LR 56.1 statement as "FM. St. ¶--" and to Trinity's memorandum as "T. Mem. –." Where a response does not provide a version of the facts different from the original statement, this opinion cites only that original statement. All of the facts below are undisputed unless specifically noted otherwise.

4

Arlington Heights, Illinois, 60004 ("the Property") (id. ¶14).

Payment of all of Trinity's indebtedness to Midwest, including the Note, was guaranteed by each of the Guarantors[4] under their Guaranties, which had been entered into on November 15, 2007 (FM. St. ¶¶16-18). Each of the Guaranties provided that the Guarantors "absolutely and unconditionally guarantee[d] full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender" (id. ¶23).

On May 14, 2010 FirstMerit purchased the assets of Midwest, including the Note, the Mortgage and the Guaranties, from the Federal Deposit Insurance Corporation, which had taken over as a receiver for Midwest (FM. St. ¶19). Just a few months later (on September 5, 2010) FirstMerit and Trinity entered into an amendment to the Note ("Amended Note") (id. ¶20), which affirmed Trinity's obligation to FirstMerit, reflected the Note's then-current balance of $890,000, amended Trinity's monthly payments and established a new maturity date of September 5, 2011 (id.). Both the Amended Note and the Guaranties contain provisions making the respective parties -- Trinity and Guarantors -- responsible for all reasonable costs and expenses incurred in connection with efforts at enforcement, including but not limited

---

[4] Trinity also alleges that Frank signed a guaranty (id. ¶15), but as already discussed there are factual disputes surrounding Frank's status as a guarantor. As those disputes are not relevant to this opinion, they will not be discussed in this Statement of Facts.

to attorneys' fees, expenses and court costs (id. ¶21).

Trinity failed to make its monthly interest-only payments to FirstMerit beginning with the payment due on February 5, 2011 (FM. St. ¶22). Thereafter Trinity failed to pay the balance in full by the September 5, 2011 maturity date (id.). On October 26, 2011 counsel for FirstMerit sent Trinity and the Guarantors a letter requesting immediate payment in full of the indebtedness due on the Note (id. ¶24). Neither Trinity nor any of the Guarantors made any such payment (id. ¶25).

On September 20, 2012 Trinity and FirstMerit entered into a Short Sale Payment Agreement ("Agreement") under which FirstMerit authorized Trinity to sell the Property in a short sale and pay the proceeds of sale to FirstMerit in exchange for FirstMerit's release of the Mortgage (FM. St. ¶26). Under the Agreement FirstMerit retained its right to collect the indebtedness on the Amended Note and the Guaranties remaining after application of the short sale payment (id. ¶27). On September 27, 2012 Trinity closed the short sale and paid FirstMerit $521,112.30 (id. ¶28).

As of March 1, 2013 (the date FirstMerit's Rule 56 motion was filed) the unpaid balance due on the Amended Note exclusive of fees and expenses was $541,467.45 (FM. St. ¶31)[5]. Interest

---

[5] That amount comprised a principal balance of $369,697.70, accrued interest of $152,530.18, advanced real estate taxes in the amount of $18,439.57 and advanced appraisal expenses in the amount of $810.00.

6

continues to accrue at $110.39 per day (id.). FirstMerit is also seeking an award of attorneys' fees and expenses aggregating $30,318.46, thus bringing the total figure (exclusive of the post-March-1 interest accrual to $571,785.91 (id.).

**Trinity's and Guarantors' Liability**

Trinity and Guarantors dispute none of the just-related factual allegations, nor do they dispute their respective liabilities (which are thus joint and several) for the full amount due on the Amended Note. Instead, as indicated at the outset, their sole argument is that summary judgment should be denied because "Plaintiff's attorneys' fees at $28,201.50[6] are excessive, not reasonable and not in line with the market rates charges [sic] by other foreclosure law firms for similar residential foreclosures" (T. Mem. 2).

While that unresolved area of dispute does pose a genuine issue of material fact, the controlling law torpedoes any effort to stave off an immediate judgment by having the figurative small tail of a fees-and-expenses dispute wag the far larger figurative dog of substantive liability. It has been clear for a full quarter century, under the definitive teaching of Budinich v. Becton Dickinson & Co., 486 U.S. 196, 199-203 (1988), that an

---

[6] [Footnote by this Court]: FirstMerit's Statement of Facts says that it is actually seeking $30,318.46 in attorneys' fees (FM. St. ¶31). Nonetheless, as will be discussed below, the differences can be sorted out at a later date.

7

outstanding dispute over fees does not prevent a final resolution of the merits of a dispute.

Thus Budinich, id. at 199 held expressly that "[a] question remaining to be decided after an order ending litigation on the merits does not prevent finality if its resolution will not alter the order or moot or revise decisions embodied in the order." And Budinich, id. at 200 went on to hold that "we think it indisputable that a claim for attorney's fees is not part of the merits of the action to which the fees pertain." Because the recoverable amount of attorneys' fees and expenses is the sole factual dispute here, there is no reason that this Court should not issue an order granting summary judgment on all counts (excluding Count II) on the full amount due on the Amended Note (excluding attorneys' fees and expenses).

As for the as-yet-unresolved Count II, another firmly established legal principle prevents its pendency from blocking the entry of a final and enforceable judgment against Trinity and Guarantors. Although Rule 54(b) states the norm that any order "that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties," the well-established principle exemplified by such decisions as Nat'l Metalcrafters v. McNeil, 787 F.2d 817,821 (7th Cir. 1986) and cases cited there (and, indeed, by numerous decisions in the post-1986 quarter

8

century) removes this action from the operation of that norm.

## Conclusion

Accordingly FirstMerit's motion for summary judgment is granted on Complaint Counts I, III, IV and V, while Count II remains open.  Judgment is ordered to be entered against Trinity and each Guarantor jointly and severally in the amount of $541,467.45 plus interest accrued at the rate of $110.39 per day since March 1, 2013 (an aggregate accrual of $18,103.96), for a total judgment of $559,571.41.  As permitted by Rule 54(b), this Court expressly determines that there is no just reason for delay and directs that a final judgment in that amount be entered in favor of FirstMerit and against each of those judgment debtors.

Finally, a status hearing is ordered to held at 8:30 a.m. on August 14, 2013.  At that time the parties should be prepared to discuss (1) the issue of attorneys' fees and expenses (including any further proceedings needed to be taken on that subject) and (2) the future of Complaint Count II.

                              /s/ Milton I. Shadur
                              Milton I. Shadur
                              Senior United States District Judge

Dated:    August 12, 2013